UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 6:14-CR-25-GFVT-HAI-20 |
| ) | |
| v. ) | |
| ) | RECOMMENDED DISPOSITION |
| RHONDA GRAY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

On referral from District Judge Van Tatenhove (D.E. 1155), the Court considers reported violations of supervised release conditions by Defendant Rhonda Gray.

**I.**

Then-District Judge Thapar entered Judgment against Defendant in September 2015 after Defendant pleaded guilty to one count of conspiracy to distribute methamphetamine. D.E. 709, 722. Defendant was sentenced to 70 months of imprisonment followed by six years of supervised release. D.E. 722 at 2-3. Defendant was first released on February 15, 2019.

On July 12, 2019, Defendant admitted to Probation that she had used methamphetamine, and submitted a urine specimen that tested positive for meth. D.E. 983. She reported that she was being physically and mentally abused at the time and asked that she be placed in inpatient substance abuse treatment. The probation office requested, and Judge Van Tatenhove granted, an added condition of supervision requiring her to complete and fully comply with an inpatient substance abuse treatment program. *Id*.

On July 23, 2019, when Defendant reported for intake at the treatment program, she again tested positive for methamphetamine. D.E. 991. The probation officer requested that no action be taken at that time, pending successful program completion, and Judge Van Tatenhove approved the request. *Id*. Defendant completed inpatient treatment on November 10, 2019, and (with some hiccups noted below) she has continued in outpatient treatment since that time.

On February 19, 2020, Judge Van Tatenhove conducted a status conference. D.E. 1011. No additional conditions were imposed, and no follow-up conference was deemed necessary. *Id*.

On April 2, 2020, the USPO issued a report charging two violations. The first was a Grade C violation of the condition prohibiting commission of a crime. On March 25, Defendant was arrested in Manchester for sealing items from Walmart and charged with class-A misdemeanor theft (shoplifting). The second violation was for not answering truthfully all questions from the probation officer. According to the report, Defendant initially told her officer that she had taken items for bathing. After this was found to contradict the records, she admitted she had stolen things in order to fraudulently return them to obtain a gift card.

An October 15, 2020 Second Addendum informed the Court that Defendant had been "unsuccessfully discharged" from her required substance-abuse and mental-health treatment programs for being absent or late for appointments.

An October 16 Second Addendum added a fourth violation charge, for violating the condition prohibiting alcohol consumption. After a urine test yielded a positive alcohol result, she admitted drinking a beer.

Defendant was released during the period leading up to her final hearing. The parties reported at the November 24, 2020, final hearing that she had returned to work and gotten "back on track." According to Defendant, she had fallen into a "crisis situation" and had suffered

"transportation issues." She stipulated to all four violations. The parties jointly recommended that the Court make a finding of guilt, but that there be no revocation. The Court adopted that recommendation. D.E. 1064. Defendant was found guilty of all four violations, but she was continued on her existing terms of supervision, with no revocation and no new judgment. D.E. 1068.

## II.

On August 22, 2023, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two violations.

First, according to the Report,

> On August 14, 2023, the defendant submitted a urine specimen at Bouncing Back Counseling in Manchester, Kentucky, which appeared positive for methamphetamine, via instant testing device. The specimen was sent to Abbott for testing. On August 18, 2023, this officer discussed the instant testing device results with the defendant, and she denied the use of methamphetamine. On August 22, 2023, a Drug Test Report was received from Abbott, confirming positive test results for methamphetamine.

Violation #1 charges a Grade-C violation of the condition prohibiting use of any controlled substance except as prescribed by a physician.

Also based on this use of methamphetamine, Violation #2 charges a violation the condition that prohibits commission of another federal, state, or local crime. Citing the Sixth Circuit's decision that use is equivalent to possession, Violation #2 is a Grade B violation because Defendant's use and possession of meth, on account of her prior drug conviction, constitutes a Class E felony under 21 U.S.C. § 844(a).

On September 14, 2023, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 1158. The Court set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. At the initial appearance, the United States made an oral

3

motion for interim detention; Defendant argued for release. *Id*. Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on October 16, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 1161. Defendant competently entered a knowing, voluntary, and intelligent stipulation to Violations #1 and #2. *Id.* For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for both violations as described in the Report. The United States thus established both violations under the standard of section 3583(e).

### III.

The Court has evaluated the entire record, including the Report (and accompanying documents) and the sentencing materials from the underlying Judgment in this District. Additionally, the Court has considered all the section 3553 factors imported into the section 3583(e) analysis.

Under section 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to conspiracy to distribute methamphetamine, a Class C felony. *See* 21 U.S.C. § 846. Such a conviction carries a two-year maximum period of incarceration upon revocation pursuant to 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation proven. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under section 7B1.1, Defendant's admitted conduct would qualify as a Grade C violation for Violation #1 and a Grade B violation with respect to Violation

4

#2. Given Defendant's criminal history category of III (the category at the time of the conviction in this District) and Grade B violation,[1] Defendant's range, under the Revocation Table of Chapter Seven, is eight to fourteen months. USSG § 7B1.4(a).

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). Defendant's conviction carries no maximum term of supervised release. *See* 18 U.S.C. § 3583(h); 21 U.S.C. 841(b)(1)(C).

## IV.

At the final hearing, the parties presented a jointly recommended penalty of revocation with six months of imprisonment and no additional supervision to follow. A portion was conducted under seal.

The government argued that Defendant's long-term addiction is what has driven her criminal activity and her supervision violations. Defendant's Category-III criminal history is all "addict convictions," the types of crimes people commit while on drugs or trying to obtain drugs. The underlying conviction was methamphetamine-related, as was the prior set of revocation proceedings. Defendant has received inpatient treatment and was on outpatient treatment when these violations occurred. Her treatment options are now "exhausted." Thus, the government argued, additional supervision had little to offer. Further rehabilitation attempts would not be worth the additional costs. Defendant will now have to sink or swim. Supervision had not deterred her drug use. The government does not expect her to traffic again, but cannot stop her from using meth.

---

[1] "Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade." USSG § 7B1.2(b).

5

According to the defense, Defendant did well for almost three years, since the 2020 revocation proceedings. She simply relapsed and has accepted responsibility. Defendant plans to attend truck-driving school. She wants to leave the people and places associated with her drug use. The defense argued that Defendant had been in an abusive relationship and was homeless at times. Nevertheless, she had often been working and was making plans to return to school.

Defendant briefly addressed the Court. She said, "No one can be more disappointed in me than me right now." She said she was going to be fighting her addiction every day of her life.

## V.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke Defendant because she possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession). Subsection 3583(g)(1) calls for revocation when the defendant is found to have possessed a controlled substance in violation of the mandatory condition that the defendant not unlawfully possess a controlled substance. Subsection 3583(d) provides an alternative to revocation and imprisonment when a drug treatment program is appropriate. *See Crace*, 207 F.3d at 835. Neither side argued for treatment as an alternative to incarceration.

The presence of a Grade B violation also means that revocation is recommended under the Guidelines. U.S.S.G. § 7B1.3(a)(1) ("Upon a finding of a Grade A or B violation, the court shall revoke probation or supervised release."). Even if revocation were not mandatory, revocation would be appropriate in this case due to the nature of the violations.

One factor concerns the nature and circumstances of Defendant's conviction. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). Defendant was indicted for a drug-distribution conspiracy that included twenty codefendants. She told officers she was a meth user and sold meth to "get stuff." PSR ¶ 10. She admitted in her plea agreement she and a codefendant sold meth and pills "to maintain their own drug habits." D.E. 709 ¶ 3. Whenever Defendant uses meth, this raises the specter she could again commit crimes to feed her habit.

The Court next considers Defendant's history and characteristics. At almost 55 years old, she has a long history of addiction-fueled misbehavior. This includes the 2020 revocation proceedings where she was shown leniency when she appeared to be getting her life on track. She then did well for about three years. She has now been caught using meth while in outpatient drug abuse treatment. She appears a danger to herself. But, taking into account her intention to pursue a new career and the strides she made from 2020 to 2023, the Court has hope that she can avoid crashing into desperation and criminal behavior again.

Another factor considers the need for additional training and treatment. Defendant has received inpatient and outpatient addiction treatment. Neither side sought additional treatment or ascribed weight to this factor.

Two other factors, the need to protect the public and the need to deter criminal conduct, do carry some weight in this case. Defendant's use of an illegal drug necessarily involves contact with drug trafficking. And Defendant trafficked drugs before to support her habit. Prior leniency from the Court has not led to full compliance in regard to drug use. Additional

supervision cannot be expected to provoke change, either. However, the government does not consider Defendant a risk for future trafficking.

The most important factor in this case is the breach of the Court's trust. The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender. The particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into section 3583(e). Defendant was shown leniency with the two violations in 2019 where revocation was not sought and in the 2020 proceeds where Defendant was not ultimately revoked. The parties agree she is an addict but otherwise not a danger to the public. She did have a successful three-year run of compliance. She was also initially denied her recent meth use despite the positive instant test result. Given this breach of trust, revocation is appropriate.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, the parties' jointly recommended penalty is the minimum necessary to address the sentencing factors. Taking into account the matters discussed during the sealed portion of the hearing, six months' incarceration is adequate given the progress Defendant has shown she can make. She also has a plan going forward. Further, given the resources already expended, it is appropriate for no additional supervision to follow. Defendant can succeed as a law-abiding citizen provided she puts into practice the things she has learned in treatment and changes her lifestyle as she intends.

## VI.

Based on the foregoing, the Court **RECOMMENDS**:

1. That, upon her stipulation, Defendant be found guilty of both violations;

2. Revocation with six months of incarceration and no additional supervised release to follow.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within **fourteen days** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission. If

Defendant chooses to waive allocution, she **SHALL** do so on or before the deadline for filing objections.

This the 18th day of October, 2023.

Signed By:
**Hanly A. Ingram**
United States Magistrate Judge